### THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEMONTRAY WARD, | : | |
| | : | |
| Plaintiff | : | |
| v. | : | 1:20-CV-615 |
| | : | (JUDGE MARIANI) |
| DR. ENIGK, et al., | : | |
| | : | |
| Defendants | : | |

### MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

Presently before the Court is a Report and Recommendation ("R&R") by Magistrate

Judge Martin Carlson recommending that the "Motion to Dismiss and for Summary

Judgment" (Doc. 29), filed by Defendants Dr. Jennifer Enigk, Lt. Rodney Troutman, Lt. Justin

Leonowicz, Lt. Eric Stuart, and Officer Eric Haubert, be granted in part and denied in part.

(Doc. 45). Both Plaintiff and Defendants filed Objections (Doc. 48; Docs. 59, 60) to the

portions of the R&R adverse to them.

### II. ANALYSIS

A District Court may "designate a magistrate judge to conduct hearings, including

evidentiary hearings, and to submit to a judge of the court proposed findings of fact and

recommendations for the disposition" of certain matters pending before the Court. 28 U.S.C.

§ 636(b)(1)(B). If a party timely and properly files a written objection to a Magistrate Judge's

Report and Recommendation, the District Court "shall make a *de novo* determination of those

portions of the report or specified proposed findings or recommendations to which objection

is made." *Id*. at § 636(b)(1)(C); *see also, Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011);

M.D. Pa. Local Rule 72.3.

Here, Judge Carlson recommended that Defendants' motion for summary judgment

as to Dr. Enigk be granted, that Defendants' motion to dismiss Plaintiff's First Amendment

retaliation claim be granted, but that Defendants' motion to dismiss Plaintiff's Eighth

Amendment claims be denied. (*See generally*, Doc. 45). Both Plaintiff and Defendants filed

Objections to Judge Carlson's R&R which the Court will address in turn.

Plaintiff does not specifically object to the R&R's conclusion that any First

Amendment retaliation claim must be dismissed. (*See generally*, Doc. 48). Rather, Plaintiff

asserts that his claims of retaliation fall within the scope of his Eighth Amendment claims.

Where this Court agrees with Judge Carlson that Plaintiff may not bring a *Bivens* claim for

retaliation under the First Amendment, and Plaintiff does not object to this conclusion, the

Court adopts Judge Carlson's recommendation as to any First Amendment claim which

Plaintiff may have been attempting to bring.

Plaintiff does object to the R&R's finding that Dr. Enigk is immune from *Bivens*

liability. Ward argues that Dr. Enigk "has not shown proof of holding rank of

commander of U.S. Public Health Services upon the record", that Dr. Enigk's "official

duties have not been certified upon the record" and that she was "at best . . . acting as

a quasi-doctor, but not serving as one." (Doc. 48, at 3, 4). The Court discerns no

error in Judge Carlson's analysis and conclusion.  Under the Public Health Service

Act, the exclusive remedy for personal injury damages resulting from the performance

of medical functions by any officer or employee of the Public Health Service while

acting within the scope of their office or employment is a suit against the United States

pursuant to the FTCA.  *See* 42 U.S.C. § 233(a).  Section 233(a) thus "grants absolute

immunity to [Public Health Service] officers and employees for actions arising out of

the performance of medical or related functions within the scope of their employment

by barring all actions against them for such conduct."  *Hui v. Castaneda*, 559 U.S. 799,

806 (2010).  Here, Defendant Enigk moved for summary judgment on the basis that

she is a member of the U.S. Public Health Service and thus entitled to immunity.  In

support of this argument, Defendants' Statement of Material Facts states that

"Defendant Dr. Enigk is a Commissioned Corps. Officer, with the rank of Lieutenant

Commander in the United States Public Health Service", citing to the Declaration of

Captain Melissa Hulett, Commissioned Corps Liaison in the Health Services Division

of the Federal Bureau of Prisons.  (Doc. 32, ¶ 1; Decl. of Hulett, Ex. 1).  Hulett's

Declaration states that, upon review of the files she maintains in the course of her

official duties, she determined that Dr. Enigk was detailed to the U.S. Penitentiary in

Lewisburg in January, 2019, and at the relevant time period, Dr. Enigk was "an active

duty commissioned officer of the United States Public Health Service, acting the scope

of her employment."  (Doc. 32, Ex. 1). (*See also*, Decl. of Enigk, Doc. 32, Ex. 2, ¶ 1

(stating that she is a commissioned officer in the U.S. Public Health Service and is

assigned to the BOP as the Chief Psychologist at U.S.P. Lewisburg)).  Further,

Defendants have come forward with evidence that Dr. Enigk conducted two suicide

risk assessments on Ward on January 3, 2019, and later interviewed and assessed

Ward on January 5, 2019 when he was in restraints and visited Ward on January 6,

2019 to perform a restrain review.  (Doc. 32, ¶¶ 5, 6, 18-33; Doc. 32, Ex. 2, at Attach.

B, C, F, G).  Ward has not come forward with any evidence to rebut Defendants'

evidence or explain how, in the performance of these official duties, Dr. Enigk's actions

were correctional or otherwise outside the scope of her official duties. Plaintiff's

assertion that Dr. Enigk "served dual roles at the prison" because she allegedly carried

a walkie-talkie, "oc spray", handcuffs, and "a security stick with vest" and writes

"incident reports, like guards do", does not create an issue of fact as to whether she

was acting in her official capacity in assessing and treating Ward.  The "incident

reports" referenced by Ward are Suicide Risk Assessments and Psychology Services

Restraint Review Forms, both clearly related to Dr. Enigk's position as a BOP

psychologist.  To the extent that Dr. Enigk carried any of the afore-mentioned items

cited by Ward, notably, Ward does not assert that Dr. Enigk used any of these items

on him or that any of these items were related to, or used during, Dr. Enigk's

evaluations and treatment of him.  As a result, the Public Health Service Act precludes

suit against Dr. Enigk and she will be dismissed from this action.

For these reasons, the Court will overrule Plaintiff's objections and adopt Judge Carlson's recommendation that Plaintiff's First Amendment retaliation claim, to the extent one is being asserted, be dismissed, and that summary judgment be entered in favor of Dr. Enigk where she is immune from *Bivens* liability in the present action.

In turn, Defendants object to each of the R&R's recommendations adverse to them. First, Defendants object to the recommendation that their motion to dismiss Ward's Eighth Amendment claims be denied, asserting that "the Supreme Court's holding in *Bivens* [] should not be expanded to the new context of suicide prevention by nonmedical prison officials without performing a special factors analysis which counsel hesitation from such expansion." (Doc. 59, at 1).

As recognized by Judge Carlson, the Supreme Court in *Bivens* concluded that, even absent statutory authorization, it would enforce a damages remedy allowing individuals to be compensated after experiencing Fourth Amendment violations of the prohibition against unreasonable searches and seizures. *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). The Supreme Court thereafter extended *Bivens* to include a Fifth Amendment Due Process damages remedy, *Davis v. Passman*, 442 U.S. 228 (1979), and to include a cause of action for damages by a prisoner against prison officials who failed to treat his asthma under the Eighth Amendment's prohibition on cruel and unusual punishment, *Carlson v. Green*, 446 U.S. 14, 19 (1980). "These three cases – *Bivens*, *Davis*, and *Carlson* – represent the only instances in which the Court has approved of an

implied damages remedy under the Constitution itself." *Ziglar v. Abbasi*, 137 S.Ct. 1843,

1855 (2017).  The Supreme Court "has made clear that expanding the *Bivens* remedy is

now a 'disfavored' judicial activity" and has observed that "it has 'consistently refused to

extend *Bivens* to any new context or new category of defendants.'"  *Ziglar*, 137 S.Ct. at

1857 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009); *Correctional Servs. Corp. v.

Malesko,* 534 U.S. 61, 68 (2001)).

      In *Ziglar*, the Supreme Court instructed that, in determining whether a *Bivens* remedy

is available, Courts must determine whether a case presents a new *Bivens* context.

Specifically,

> If the case is different in a meaningful way from previous *Bivens* cases decided
> by this Court, then the context is new. Without endeavoring to create an
> exhaustive list of differences that are meaningful enough to make a given
> context a new one, some examples might prove instructive. A case might differ
> in a meaningful way because of the rank of the officers involved; the
> constitutional right at issue; the generality or specificity of the official action; the
> extent of judicial guidance as to how an officer should respond to the problem
> or emergency to be confronted; the statutory or other legal mandate under
> which the officer was operating; the risk of disruptive intrusion by the Judiciary
> into the functioning of other branches; or the presence of potential special
> factors that previous *Bivens* cases did not consider.

*Ziglar*, 137 S.Ct. at 1859-1860.  If the case presents a new context, the Court must engage

in a special factors analysis.  *Id*. at 1860.  A *Bivens* remedy is not available if there are

"'special factors counselling hesitation in the absence of affirmative action by Congress.'"

*Carlson,* 446 U.S. at 18 (quoting *Bivens,* 403 U.S., at 396).  The Third Circuit has identified

two special factors as "'particularly weighty': the availability of an alternative remedial

structure and separation-of-powers concerns." *Mack v. Yost*, 968 F.3d 311, 320 (3d Cir. 2020) (quoting *Bistrian v. Levi*, 912 F.3d 79, 90 (3d Cir. 2018)). *See also Ziglar*, 137 S.Ct. at 1858 ("if there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action.").

Here, liberally construing Plaintiff's Complaint, Ward has alleged two distinct claims under the Eighth Amendment with respect to the non-medical defendants: (1) that these Defendants denied him adequate medical care related to his alleged suicidal threats and suicide attempt (inadequate medical treatment claim) and (2) that the Defendants' placement of him in four-point restraints for four days caused him to suffer permanent physical damage and was in retaliation for "his deteriorating mental health condition" (*see e.g.* Doc. 1, at 7, ¶ 4) (excessive force/conditions of confinement claim).

Ward's first Eighth Amendment claim alleges that he was denied access to adequate mental health treatment. (Doc. 1, at 5 (§ II(D)). With respect to the non-medical defendants, Plaintiff sets forth the following factual allegations in support of this claim. Ward alleges that he told Officer Haubert four times on January 3, 2019 "of his suicidal thoughts before cutting himself in an attempt to kill himself." (Doc. 1, at 6 (§ IV, ¶ 2)). Haubert "refused to and failed to get help the first time he was aware of Plaintiff's suicidal attempts." (*Id*.). Nonetheless, Plaintiff alleges that Haubert did tell Lieutenant Troutman of Plaintiff's suicide attempts. (*Id*. at ¶ 3). Troutman then escorted Ward "to medical for examination of the lacerations/cuts" on Plaintiff's arm. (*Id*.). The remainder of Ward's factual allegations

with respect to this claim are directed towards the actions of Dr. Enigk in evaluating Plaintiff, "want[ing] to place Plaintiff in ambulatory restraints because this would inflict cruel and unusual punishment on Plaintiff as a retaliatory response to his deteriorating mental health condition", and "order[ing] Lieutenant Troutman to place Plaintiff in hard ambulatory restraints until he doesn't feel suicidal anymore as retaliation and to inflict cruel and unusual punishments on Plaintiff because the restraints when used in an abusive and malicious manner to punish Plaintiff would cause him extensive pain and suffering and permanent nerve damage."  (Doc. 1, at 6-7 (§ IV, ¶¶ 3-5)).

Plaintiff's second Eighth Amendment claim is liberally construed as a claim for excessive force or for conditions of confinement.  Plaintiff's complaint alleges that Lieutenant Leonowicz placed Ward in ambulatory restraints, at the direction of Troutman, "with the malicious intent of causing Plaintiff pain and suffering" in that the restraints were "so tight around his wrist, waist, and ankles it caused Plaintiff to suffer from permanent life long nerve damage. . ." (Doc. 1, at 8 (§ IV, ¶ 7)).  Plaintiff alleges that Leonowicz, Stuart, and Troutman informed him that they were "making him suffer as a result of his attempts to commit suicide." (*Id*. at ¶ 8).  Ward remained in ambulatory and four-point restraints until January 6, 2019.  (*Id*. at ¶ 9).

Plaintiff's Eighth Amendment claim arising out of his alleged repeated attempts to notify Defendant Haubert of his "suicidal attempts", Haubert's failure to act, and Ward's suicide attempt thereafter, may ultimately be barred by *Bivens*.  Nonetheless, as Judge

Carlson properly noted, the Defendants' arguments as to this claim are brought in the

context of a motion to dismiss, and the Court is thus constrained in its review of Plaintiff's

causes of action.  (*See* Doc. 45, at 19-20).  Looking only to the "complaint, attached

exhibits, and matters of public record", the Court agrees with Judge Carlson's finding that

"the defendants are [not] entitled to dismissal of the charges *at this stage*."  (Doc. 45, at 20)

(emphasis added).  With respect to this claim, Defendants acknowledge that the Supreme

Court recognized a damages remedy under *Bivens* for a violation of a prisoner's Eighth

Amendment rights in *Carlson v. Green*.  (*See* Doc. 60, at 6) (citing *Carlson v. Green*, 446

U.S. 14 (1980)).  In *Carlson*, an inmate was admitted to the prison hospital with an

asthmatic attack and was not seen by a doctor for eight hours, despite increasing agitation

and increasing difficulty breathing.  A non-licensed nurse in charge of the prison hospital left

the prisoner for a time, later brought the prisoner a respirator which he knew to be broken,

and then administered a drug counter-indicated for a person suffering an asthma attack.

The inmate was later removed to a non-prison hospital where he was pronounced dead.

*See Green v. Carlson*, 581 F.2d 669, 671 (7th Cir. 1978).  The Supreme Court held that the

Eighth Amendment Cruel and Unusual Punishments Clause gave the prisoner's estate a

damages remedy under *Bivens* for failure to provide adequate medical treatment.  *See*

*generally*, *Carlson v. Green*, 446 U.S. 14 (1980).[1]

---

[1] *See Minneci v. Pollard*, 565 U.S. 118 (2012):

In *Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980), the Court
considered a claim for damages brought by the estate of a federal prisoner who (the estate
said) had died as the result of Government officials' "deliberat[e] indifferen[ce]" to his medical

Defendants here argue that "Ward's case is distinguishable from the claim in *Carlson*

that the defendants failed to respond for more than eight hours to plaintiff's asthma attack

and took affirmative actions that worsened plaintiff's condition." (Doc. 60, at 8). Defendants

further note that, unlike in *Carlson*, there is no allegation of racial prejudice and that

allegations of attempted suicide were not at issue in *Carlson*. The Court agrees with Judge

Carlson that Defendants' arguments are unpersuasive at this stage in the proceedings.

Defendants attempt to finely parse each factual difference between *Carlson* and the present

case on an undeveloped factual record. Here, the complaint does not set forth the specific

time frame within which Ward allegedly repeatedly informed Haubert of his suicidal

"attempts", the time when he cut himself, and when he was finally escorted for medical

examination. The Complaint further does not detail the severity of Ward's self-inflicted

physical injuries. Finally, although the Supreme Court in a footnote in *Carlson* referenced

respondent's allegation that the petitioners' alleged deliberate indifference to the prisoner's

serious medical needs "was in part attributable to racial prejudice", *see Carlson*, 446 U.S. at

17 n.1, this Court does not deem the Supreme Court's holding to turn on the presence of a

───────────────

needs – indifference that violated the Eighth Amendment. The Court implied an action for
damages from the Eighth Amendment. It noted that state law offered the particular plaintiff
no meaningful damages remedy. Although the estate might have brought a damages claim
under the Federal Tort Claims Act, the defendant in any such lawsuit was the employer,
namely, the United States, not the individual officers who had committed the violation. A
damages remedy against an individual officer, the Court added, would prove a more effective
deterrent. And, rather than leave compensation to the "vagaries" of state tort law, a federal
*Bivens* action would provide "uniform rules."
*Id*. at 124 (internal citations omitted).

racial animus claim or absence thereof.  Such a reading unreasonably narrows the scope of
the *Carlson* Court's holding.

The Court will thus overrule Defendants' objection with respect to Ward's Eighth
Amendment medical care claim.

Nonetheless, Plaintiff's second Eighth Amendment claim, which involves allegations
related to his subsequent placement in ambulatory and four-point restraints, whether
characterized as a claim for excessive force or for conditions of confinement, will be
dismissed where there is no available *Bivens* remedy.  In the present case, Ward alleges
that defendants used excessive force against him in violation of his Eighth Amendment
rights when they placed him in restraints which were too tight.  This excessive force claim
presents a new context because it is "different in a meaningful way from previous *Bivens*
cases decided by [the Supreme] Court." *Ziglar*, 137 S. Ct. at 1859.[2]  The Supreme Court
has never extended *Bivens* to claims against federal prison officials for the use of excessive
force or in addressing conditions of confinement.  Of the three cases in which the Supreme
Court has recognized *Bivens* claims – *Ziglar*, *Davis*, and *Carlson* – *Carlson* is the only case
that involves an Eighth Amendment claim.  However, on their face, Ward's claims are
decidedly different from the Eighth Amendment inadequate medical care claim in *Carlson*.
*See Mammana v. Barben*, 856 F.App'x 411 (3d Cir. 2021) (rejecting inmate's argument that

---

[2] Simply stated, Ward's claims "bear little resemblance" to "a claim against FBI agents for
handcuffing a man in his own home without a warrant; a claim against a Congressman for firing his female
secretary; and a claim against prison officials for failure to treat an inmate's asthma," the only *Bivens*
contexts as of yet recognized by the Supreme Court. *Ziglar*, 137 S.Ct. at 1860.

*Carlson* gives footing to an Eighth Amendment conditions of confinement claim against federal officials, explaining that inmate's claim that his treatment in the "Yellow Room" violated his Eighth Amendment rights was an attempt to bring "a new implied cause of action to sue federal prison officials for unconstitutional conditions of confinement, a step never taken by the Supreme Court nor any circuit court."); *Bistrian v. Levi*, 912 F.3d 79, 94 (3d Cir. 2018) (holding that although *Davis* and *Carlson* extended *Bivens* to the Fifth and Eighth Amendments, respectively, they only addressed gender discrimination and inadequate medical care claims, and "even if there are 'significant parallels to one of the Court's previous *Bivens* cases,' 'a modest extension is still an extension.'" (quoting *Ziglar*, 137 S. Ct. at 1864)).  In a case similar to the present action, the District Court explained:

> Hill alleges that defendants subjected him to cruel and unusual punishment by placing him in four-point restraints and by not releasing him from the restraints to use the toilet during a 43-hour period, purportedly forcing him to lie in his own waste. . . This claim too "bear[s] little resemblance" to the medical deliberate indifference at issue in *Carlson. See Abbasi*, 137 S. Ct. at 1860; *Mammana*, 856 Fed.Appx. at 414-15. The claims arise under the same constitutional amendment, but the Supreme Court has made clear that a common constitutional basis is simply not enough to link a new *Bivens* theory to an existing *Bivens* context. *See Hernandez* [*v. Mesa*, 140 S.Ct. 735, 743 (2020)] (indicating courts must "look beyond the constitutional provisions invoked"). Nor is it enough that the new theory matches an existing context at a high level of generality, *i.e.*, "prisoner mistreatment." *Cf. Abbasi*, 137 S. Ct. at 1864-65; *see also Hernandez*, 140 S. Ct. at 743 ("[O]ur understanding of a 'new' context' is broad.").
>
> Other than high-level parallels, Hill's claims differ meaningfully from *Carlson*. They differ in terms of the nature and scope of the misconduct alleged, and they differ in the legal standards and judicial guidance that would apply to that misconduct. *See Abbasi*, 137 S. Ct. at 1860; *see also Mammana v. Barben*, No. 4:17-CV-645, 2020 WL 3469074, at *3 (M.D. Pa. June 25, 2020) (Brann,

J.)(noting differing elements for medical-deliberate-indifference and conditions-of-confinement claims), *aff'd*, 856 Fed.Appx. 411. Therefore, we agree with defendants that Hill's claims present a new context for purposes of *Bivens*.

*Hill v. Lappin*, -- F.Supp.3d --, 2021 WL 2222725, * 4-5 (M.D.Pa. 2021).

Because this Court finds that Ward's claims present a new context, the Court must consider whether any alternative remedies exist and whether special factors counsel against extending the *Bivens* remedy. *Ziglar*, 137 S.Ct. at 1859-60. Here, Defendants' brief in support of their motion to dismiss argues that the BOP's Administrative Remedy Program provides an alternative process. (*See e.g.*, Doc. 33 at 18-19). The Supreme Court has found that "administrative review mechanisms" can provide "meaningful redress" – even if they do not "fully remedy the constitutional violation." *Malesko*, 534 U.S. at 68. The Court concludes that the BOP's Administrative Remedy Program provides an alternative process. Significantly, the fact that Ward may have been unsuccessful in utilizing the administrative process does not mean that such a process does not exist as an alternative remedy. *Malesko*, 534 U.S. at 69 (noting that "[s]o long as the plaintiff had an avenue for some redress, bedrock principles of separation of powers foreclosed judicial imposition of a new substantive liability"). "[W]hen alternative methods of relief are available, a *Bivens* remedy usually is not." *Ziglar*, 137 S. Ct. at 1863.

Defendants also rely on special factors including the separation-of-powers concerns raised by Congress' repeated legislative action on safeguarding the rights of federal prisoners without providing a damages remedy against federal actors and citing to the

Prison Litigation Reform Act, which does not provide a cause of action for damages in

federal court, as evidence that Congress intended to "limit" prison litigation and remove

federal courts from supervising or managing day-to-day prison operations. (Doc. 33, at 19).

Defendants further argue that the *Bivens* remedy should not be extended in the present

context where it would result in "judicial second guessing of prison policies" (Doc. 33, at 22).

The Court agrees that Ward's Eighth Amendment excessive force/conditions of

confinement claims warrant hesitation. Here, the special factors weigh heavily against

extending *Bivens* to Ward's claims, and such an extension would be contrary to law. [3]

Accordingly, the Court will dismiss Ward's Eighth Amendment claim for excessive

force/conditions of confinement.

In light of the Court's dismissal of Ward's Eighth Amendment excessive force/

conditions of confinement claim, Defendants Troutman, Leonowicz, and Stuart will be

dismissed from this action. As previously explained, Plaintiff's complaint with respect to his

inadequate medical treatment claim alleges that he told Officer Haubert four times on

January 3, 2019 "of his suicidal thoughts before cutting himself in an attempt to kill himself"

but that Haubert "refused to and failed to get help the first time he was aware of Plaintiff's

---

[3] *See Hill*, 2021 WL 2222725 at * 6 (claims of excessive force and conditions of confinement "squarely implicate BOP policies regarding prison discipline and use of restraints. . . These policies are inextricably tied to the preservation of institutional rules and order. They also implicate numerous health and safety issues. Adjudicating conditions-of-confinement and excessive-force claims would entangle the federal judiciary in byzantine issues of prison administration and institutional security, . . . and would impact BOP operations 'systemwide,' . . . . To imply a cause of action in these circumstances would cross the theoretical median into a lane 'most often' reserved for Congress.")(internal citations omitted). *See also, id*. n.5 (collecting cases).

suicidal attempts" (Doc. 1, at 6 (§ IV, ¶ 2)).  Ward does not set forth any factual allegations

as to any involvement by Defendants Leonowicz or Stuart.  Furthermore, Plaintiff's sole

allegation as to Troutman's involvement and participation is that, upon being told by Haubert

of Plaintiff's suicide attempts, Troutman escorted Ward "to medical for examination of the

lacerations/cuts" on his arm.  (*Id*. at ¶ 3).  This allegation is plainly insufficient to set forth a

claim against Troutman for medical indifference under the Eighth Amendment.

Defendants further object to Judge Carlson's recommendation that Haubert,

Leonowicz, and Troutman are not, at this stage in the proceedings and in light of the record

presently before the Court, entitled to qualified immunity.  (Doc. 60, at 12).  Because the

Court will dismiss Leonowicz and Troutman from this action for the reasons set forth above,

the Court only addresses Defendants' argument as to Haubert.

In deciding whether to grant qualified immunity, the Court must consider two

questions: First, "[t]aken in the light most favorable to the party asserting the injury, do the

facts alleged show the officer's conduct violated a constitutional right?"  *Saucier v. Katz,* 533

U.S. 194, 201 (2001). Second, "if a violation could be made out on a favorable view of the

parties' submissions, the next, sequential step is to ask whether the right was clearly

established."  *Id.*  This latter requirement means that the "contours of the right must be

sufficiently clear that a reasonable official would understand that what he is doing violates

that right."  *Id.* at 202 (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)). If the

answer to both questions is "yes," then there can be no qualified immunity.

However, the Third Circuit has cautioned that "it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases." *Newland v. Reehorst,* 328 F.App'x. 788, 791 n. 3 (3d Cir. 2009). It has likewise held that when a "complaint failed to disclose whether the defendants' actions did not violate a clearly established constitutional right, dismissal on qualified immunity grounds was premature." *Debrew v. Auman,* 354 F.App'x. 639, 642 (3d Cir. 2009) (citing *Thomas v. Independence Twp.,* 463 F.3d 285, 291 (3d Cir. 2006)).

At this time, it appears that the present case is one of the "vast majority of cases" in which a determination of qualified immunity is inappropriate at the pleading stage. When viewing the facts in the complaint in the light most favorable to Ward, the complaint indicates that Defendant Haubert may have violated Ward's Eighth Amendment right by failing to provide him with proper medical attention. Moreover, the protections of the Eighth Amendment are sufficiently clear that Haubert should have known that his actions, or inactions, violated those protections. Although further development of the record may cast a new light on the qualified immunity analysis, the Court agrees with Judge Carlson that "[i]t is not apparent, from the face of the Complaint, that CO Haubert . . . [is] entitled to qualified immunity, as Ward's Complaint asserts that . . . CO Haubert . . . [was] told of his suicidal thoughts prior to a suicide attempt, after which he was placed in restraints rather than provided with mental health treatment or being placed on suicide watch" (Doc. 45, at 24).

## III. CONCLUSION

For the reasons set forth above, upon *de novo* review of Magistrate Judge Carlson's R&R (Doc. 45), the Court will overrule Plaintiff's Objections and sustain in part and overrule in part Defendants' objections.

A separate Order follows.

Robert D. Mariani
United States District Judge